**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KHARA INC. and GROUND WORKS CO., LTD., | |
| Plaintiffs, | Civil Action No.: 1:22-cv-00591 |
| v. | Judge John Robert Blakey |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", | Magistrate Judge Jeffrey T. Gilbert |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' *EX PARTE* MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY ASSET RESTRAINT, EXPEDITED DISCOVERY, AND SERVICE OF PROCESS BY E-MAIL AND/OR ELECTRONIC PUBLICATION**

Plaintiffs, KHARA INC. and GROUND WORKS CO., LTD. ("GWC" or "Plaintiffs"), submit this Memorandum in support of Plaintiffs' *Ex Parte* Motion for Entry of a Temporary Restraining Order, including a temporary injunction, a temporary asset restraint, expedited discovery, and service of process by email and/or electronic publication (the "*Ex Parte* Motion").

# TABLE OF CONTENTS

I.    **INTRODUCTION AND SUMMARY OF ARGUMENT** ........................................1

II.    **STATEMENT OF FACTS**..............................................................................4

    A.  PLAINTIFFS' TRADEMARKS AND PRODUCTS...........................................4

    B.  DEFENDANTS' UNLAWFUL ACTIVITIES ...............................................5

        i.  *Defendants Operate Legitimate-Looking Internet Stores* ..................................6

        ii.  *Defendants Illegitimately Optimize the Defendant Internet Stores for Search Engines*...6

        iii.  *Defendants Use Fictitious Aliases and Common Tactics to Evade Shut Down* ..............7

III.  **ARGUMENT** ..............................................................................................9

    A.  THIS COURT MAY EXERCISE PERSONAL JURISDICTION OVER DEFENDANTS.........................10

    B.  STANDARD FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ...........12

    C.  PLAINTIFFS WILL LIKELY SUCCEED ON THE MERITS ...........................................13

        i.  *Plaintiffs Will Likely Succeed on Plaintiffs' Trademark Infringement and Counterfeiting Claim*...........................................................13

        ii.  *Plaintiffs are Likely to Succeed on the False Designation of Origin Claim*...................17

        iii.  *Plaintiffs are Likely to Succeed on the Illinois Uniform Deceptive Trade Practices Act Claim*.........................................................17

    D.  THERE IS NO ADEQUATE REMEDY AT LAW AND PLAINTIFFS WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY RELIEF..................................18

    E.  THE BALANCING OF HARMS TIPS IN PLAINTIFFS' FAVOR ...................................19

    F.  ISSUANCE OF THE INJUNCTION IS IN THE PUBLIC INTEREST....................................20

IV.  **THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE**....................................21

    A.  A TEMPORARY RESTRAINING ORDER IMMEDIATELY ENJOINING DEFENDANTS' UNAUTHORIZED AND UNLAWFUL USE OF PLAINTIFFS' MARKS IS APPROPRIATE .................22

    B.  PREVENTING THE FRAUDULENT TRANSFER OF ASSETS IS APPROPRIATE ..............................23

    C.  PLAINTIFFS ARE ENTITLED TO EXPEDITED DISCOVERY .........................................24

    D.  SERVICE OF PROCESS BY E-MAIL AND/OR ELECTRONIC PUBLICATION IS WARRANTED IN THIS CASE...................................................................26

V.    **A BOND SHOULD SECURE THE INJUNCTIVE RELIEF**...............................................30

VI.  **CONCLUSION** ..........................................................................................30

i

# TABLE OF AUTHORITIES

<u>Cases</u>

*Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 11 (7th Cir. 1992) ................................................ 12

*All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.,* 2013 WL 1701871, *10 (C.D. Ill. Apr. 18, 2013) ................................................................................................ 17

*Am. Broad. Co. v. Maljack Prods., Inc.*, 34 F. Supp. 2d 665, 681 (N.D. Ill. 1998) ........................... 17

*Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007) .................. 23, 24

*Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) ........................................... 20

*CAE, Inc. v. Clean Air Eng'g Inc.,* 267 F.3d 660, 681 (7th Cir. 2001) ............................................. 15

*Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, *1 (N.D. Ill. May 15, 2001) ................................................................................ 12

*Christian Dior Couture, S.A. v. Liu,* 2015 U.S. Dist. LEXIS 158225 (N.D. Ill. Nov. 17, 2015) ....... 11

*Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) ......................... 10

*CSC Holdings, Inc. v. Redisi,* 309 F.3d 988 (7th Cir. 2002) ............................................................. 24

*Curry v. Revolution Labs., LLC,* 949 F.3d 385, 399 (7th Cir. 2020) ................................................. 11

*Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940) ........................................................... 24

*Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d 376, 381 (7th Cir. 1996) ............................................ 14

*Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 461, 462, 469 (7th Cir. 2000)... 12, 14, 18, 20

*G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 999 (7th Cir. 1989)............ 14

*Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis,* 35 F.3d 1134, 1140 (7th Cir. 1994) ................................................................................................... 19

*Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) .................................................................. 25

*Grupo Mexicano de Desarrollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308 (1999) ........................... 24

*Hangzhou Chic Intelligent Technology Co.; and Unicorn Global, Inc., v. The Partnerships and Unincorporated Associations Identified on Schedule A,* 20-cv-04806 (N.D. Ill. April 1, 2021) ... 28

*Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977). 19

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,* 174 F.3d 411, 421 (4th Cir. 1999)............................ 30

*In re LDK Solar Secs. Litig.,* 2008 WL 2415186,*2 (N.D. Cal. Jun. 12, 2008)................................. 29

*In re Potash Antitrust Litig.,* 667 F. Supp. 2d 907, 930 (N.D. Ill. 2009)........................................... 29

*In re Vuitton et Fils*, *S.A.,* 606 F.2d 1 (2d Cir. 1979)........................................................................... 3

*Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir. 1988).......... 19

*James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976) .................... 21

*Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.,* 188 F. 3d 427, 436 (7th Cir. 1999)........... 17

*Juniper Networks, Inc. v. Bahattab*, No. 1:07-cv-01771-PLF-AK, 2008 WL 250584, *1-2, (D.D.C. Jan. 30, 2008) ....................................................................................................................... 28

*Khara Inc., et al. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 22-cv-00010 (N.D. Ill. Jan. 5, 2022)............................................................................ 3, 22, 24

*Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994) ............................ 20

*Legend Pictures, LLC v. The Partnerships and Unincorporated Associations Identified on Schedule "A",* No. 21-cv-02788 (N.D. Ill. May 26, 2021) ................................................................... 3, 22, 24

*Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) .................. 23, 24

*Libman Co. v. Vining Indus., Inc.*, 69 F.3d 1360, 1363 (7th Cir.1995) ............................................. 16

*Lorillard Tobacco Co. v. Montrose Wholesale Candies,* 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005) ......................................................................................................................................... 23

*MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co., Ltd.*, No. 1:08-cv-02593, 2008 WL 5100414, *2 (N.D. Ill. Dec. 1, 2008) ............................................................................................................... 27

*Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n,* 929 F. Supp. 473, 478 (D.D.C. 1996). ........................................................................................................................ 20

*Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.,* 128 F.3d 1111, 1114 (7th Cir. 1997) ............ 18

*Monco v. Zoltek Corp.*, 2018 WL 3190817, at \*4 (N.D. Ill. Apr. 24, 2018) ..................................... 28

*Monster Energy Co. v. Chen Wensheng*, 136 F. Supp. 3d 897, 910-11 (N.D. Ill. 2015)................... 30

*Monster Energy Co. v. Chen Wensheng*, 2015 U.S. Dist. LEXIS 132283 (N.D. Ill. Sept. 29, 2015) 11

*Nanya Tech. Corp. v. Fujitsu Ltd.*, No. 1:06-cv-00025, 2007 WL 269087, \*6 (D. Guam Jan. 26, 2007) ........................................................................................................................................... 29

*Neopost Industrie B.V. v. PFE Int'l Inc.,* 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005).................. 13, 17

*Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380 (1978)................................ 25

*Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 495 (2d Cir. 1961)............................ 14

*Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir.1987) ............................................ 14

*Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 563 (E.D. Tenn. 2004).. 27, 29

*Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002).............................. 19

*Purdue Research Found. v. Sanofi-Sythelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).................... 11

*Rathmann Grp. v. Tanenbaum,* 889 F.2d 787, 789 (8th Cir. 1989)..................................................... 30

*Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) ................................................... 18

*Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992)........................ 23, 24

*Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002) ............................... 27, 28

*Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 960 (7th Cir. 1992) ........................ 16

*Shashi, Inc. v. Ramada Worldwide, Inc.,* No. 7:05-cv-00016-JGW-mfu, 2005 WL 552593, \*4 (W.D. Va. Mar. 1, 2005)............................................................................................................................ 21

*Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994) ............................................. 17

*Stahly, Inc. v. M.H. Jacobs Co.,* 183 F.2d 914, 917 (7th Cir. 1950).................................................. 21

iv

*Strabala v. Zhang*, 318 F.R.D. 81, 115 (N.D. Ill. 2016) ..................................................... 28

*Tommy Hilfiger Licensing LLC et al v. The Partnerships and Unincorporated Associations Identified*

    *on Schedule "A"*, 1:20-cv-07477 (N.D. Ill. Mar. 24, 2021) ........................................... 11

*Topps Co., Inc. v. Gerrit J. Verburg Co.*, 41 U.S.P.Q.2d 1412, 1417 (S.D.N.Y.1996)...................... 14

*Trans Union LLC v. Credit Research, Inc.,* 142 F. Supp. 2d 1029, 1043 (N.D. Ill. 2001)................ 15

*Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001) ......................................... 12, 20

*uBID, Inc. v. GoDaddy Group, Inc.* 623 F.3d 421, 423 (7th Cir. 2010) ........................................... 11

*Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007)................ 24

*Vineyard House, LLC v. Constellation Brands United States Operations, Inc.*, No. 4:19-cv-01424-

    YGR, 2021 U.S. Dist. LEXIS 15702 (N.D. Cal. Jan. 26, 2021)..................................................... 18

*Wesley–Jessen Division of Schering Corp. v. Bausch & Lomb Inc.*, 698 F.2d 862 (7th Cir.1983).... 18

<u>Statutes</u>

15 U.S.C. § 1051 et seq................................................................................................................ 10

15 U.S.C. § 1057(b) .................................................................................................................... 13

15 U.S.C. § 1114(1) .................................................................................................................... 13

15 U.S.C. § 1117.................................................................................................................... 4, 23

15 U.S.C. § 1125 ........................................................................................................................ 17

28 U.S.C. § 1331 ........................................................................................................................ 10

28 U.S.C. §§ 1338(a)-(b) ........................................................................................................... 10

28 U.S.C. § 1367(a) ................................................................................................................... 10

28 U.S.C. § 1391 ........................................................................................................................ 10

Fed. R. Civ. P. 4................................................................................................. 26, 27, 28, 30

Fed. R. Civ. P. 26 ...................................................................................................................... 25

Fed. R. Civ. P. 65 ............................................................................................................ *passim*

<u>Other Authorities</u>

*4 Callmann on Unfair Competition, Trademarks and Monopolies*
§ 88.3(b) at 205 (3d ed. 1970) ........................................................................................19

Consolidated Appropriations Act, 2021 ............................................................................ 18

The Hague Convention, Article 1 ...................................................................................... 29

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*
§ 30:40 (4th ed. 2013) .....................................................................................................24

<u>**MEMORANDUM OF LAW**</u>

**I.      INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiffs bring this action against the defendants identified on Schedule A to the Complaint (collectively, the "Defendants") for federal trademark infringement and counterfeiting (Count I), false designation of origin (Count II), and violation of the Illinois Uniform Deceptive Trade Practices Act (Count III). As alleged in the Complaint, Defendants are promoting, advertising, marketing, distributing, offering for sale, and selling counterfeit products in connection with Plaintiffs' federally registered trademarks (collectively, the "Counterfeit NEON GENESIS EVANGELION Products"), through various online marketplace accounts listed in Schedule A to the Complaint (collectively, the "Defendant Internet Stores"). In short, Defendants run a counterfeiting operation with disregard for anything except generating profits.

Defendants create numerous Defendant Internet Stores with an intent to have them appear to be selling genuine products, while actually selling unauthorized and unlicensed Counterfeit NEON GENESIS EVANGELION Products to unknowing consumers. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them, and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by concealing both their identities and the full scope and interworking of their counterfeiting operation. Plaintiffs have filed this action to combat Defendants' infringement and counterfeiting of Plaintiffs' registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit NEON GENESIS EVANGELION Products over the internet.

This Court has personal jurisdiction over Defendants because each Defendant targets Illinois residents and has offered to sell, and on information and belief, has sold and continues to sell Counterfeit NEON GENESIS EVANGELION Products to consumers within the United States, including the State of Illinois. Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive internet stores through which Illinois residents can purchase products being sold in connection with Plaintiffs' NEON GENESIS EVANGELION Trademarks. Defendants directly target unlawful business activities toward consumers in Illinois, cause harm to Plaintiffs' business within this judicial district, and have caused and will continue to cause irreparable injury to Plaintiffs. Defendants deceive the public by trading upon Plaintiffs' reputation and goodwill and by using their commercial, interactive internet stores to sell and/or offer for sale unlicensed Counterfeit NEON GENESIS EVANGELION Products in connection with Plaintiffs' trademarks.

Defendants' ongoing unlawful activities should be restrained, and Plaintiffs respectfully request that this Court issue *ex parte* a Temporary Restraining Order. Specifically, Plaintiffs seek an order to: (1) temporarily restraining Defendants' continued manufacture, importation, distribution, offering for sale, and sale of Counterfeit NEON GENESIS EVANGELION Products; (2) temporarily restraining Defendants' assets to preserve Plaintiffs' right to an equitable accounting. Ancillary to and as part of the Temporary Restraining Order, Plaintiffs respectfully request that this Court (3) authorize expedited discovery allowing Plaintiffs to inspect and copy Defendants' records relating to the manufacture, distribution, offering for sale, and sale of Counterfeit NEON GENESIS EVANGELION Products and Defendants' financial accounts; and (4) authorize service by electronic mail and/or electronic publication.

2

In light of the covert nature of offshore counterfeiting activities and the vital need to establish an economic disincentive for trademark infringement, courts regularly issue such orders. *See, e.g., Khara Inc. et al. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 22-cv-00010 (N.D. Ill. Jan. 5, 2022) and *Legend Pictures, LLC v. The Partnerships and Unincorporated Associations Identified on Schedule "A",* No. 21-cv-02788 (N.D. Ill. May 26, 2021) (granting a temporary restraining order); *see also, In re Vuitton et Fils*, *S.A.,* 606 F.2d 1 (2d Cir. 1979) (holding that ex parte temporary restraining orders are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the court can provide effective final relief).

Plaintiffs' well-pleaded factual allegations, which must be accepted as true, and evidence submitted through declarations, establishes that issuing a temporary restraining order against Defendants is necessary and proper. Plaintiffs can demonstrate a strong likelihood of success on the merits. Plaintiff KHARA INC. is the owner of the NEON GENESIS EVANGELION Trademarks and Plaintiff GROUND WORKS CO., LTD., on behalf of Plaintiff KHARA INC., exclusively manages the licensing of the NEON GENESIS EVANGELION merchandise worldwide, with an exclusive license to the NEON GENESIS EVANGELION Trademark Registrations, and Defendants' use of Plaintiffs' trademarks to sell Counterfeit NEON GENESIS EVANGELION Products is causing consumer confusion.

In addition, Defendants have and continue to irreparably harm Plaintiffs through diminished goodwill and damage to Plaintiffs' reputation. Monetary damages are inadequate to Plaintiffs for these damages. This makes injunctive relief particularly appropriate in this matter.

Issuance of an injunction is also in the public interest because it will prevent confusion among the public and prevent unknowing consumers from being deceived into purchasing Counterfeit NEON GENESIS EVANGELION Products.

Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties, such as online Marketplaces and financial institutions, who are in active concert with Defendants or who aid and abet Defendants and are given actual notice of the order. Similarly, a prejudgment asset freeze is also proper since Plaintiffs seek an equitable remedy in the accounting of Defendants' profits pursuant to 15 U.S.C. § 1117(a). Finally, an order authorizing service of process by email and/or electronic publication is proper since as a result of Defendants' intentional efforts to conceal their identities and operate their business online. Serving Defendants electronically is the best method for notifying them of this action and providing them the opportunity to defend and present their objections.

## II. STATEMENT OF FACTS

### A. Plaintiffs' Trademarks and Products

Plaintiff, Ground Works CO., LTD., on behalf of Plaintiff KHARA INC., exclusively manages the licensing of NEON GENESIS EVANGELION merchandise worldwide. *See* Declaration of Yasuhiro Kamimura (the "Kamimura Declaration") at ¶ 3. Long before Defendants' acts described herein, Plaintiffs launched the NEON GENESIS EVANGELION brand products. Plaintiff KHARA INC. is the owner of the trademark registrations for the NEON GENESIS EVANGELION Trademarks (the "NEON GENESIS EVANGELION Trademarks"). *Id.* at ¶ 5. The U.S. registrations for the NEON GENESIS EVANGELION Trademarks are valid, subsisting, and in full force and effect. *Id.* at ¶ 6. True and correct copies of the federal trademark registration certificates for the NEON GENESIS EVANGELION Trademarks are attached to the Kamimura Declaration as Exhibit 1. *Id.* at ¶ 6. The NEON GENESIS EVANGELION Trademarks are

distinctive and identify the merchandise as goods from Plaintiffs. *Id.* at ¶ 7. The registrations for the NEON GENESIS EVANGELION Trademarks constitute *prima facie* evidence of their validity and of Plaintiffs' exclusive rights to use the NEON GENESIS EVANGELION Trademarks which have been continuously used and never abandoned. *Id.* at ¶ 8. Plaintiffs have expended time, money, and other resources in developing, advertising, and otherwise promoting the NEON GENESIS EVANGELION Trademarks. *Id.* at ¶ 9. As a result, products bearing the NEON GENESIS EVANGELION Trademarks are recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiffs. *Id.*

### B. Defendants' Unlawful Activities

The success of the NEON GENESIS EVANGELION brand has resulted in it being counterfeited. *Id. at* ¶ 10. Plaintiffs have identified numerous marketplace listings on platforms such as, but not limited to, Amazon, including the Defendant Internet Stores, which were offering for sale, selling, and importing Counterfeit NEON GENESIS EVANGELION Products to consumers in this judicial district and throughout the United States. *Id.* Over 90 percent of all intellectually property seizures occur in the international mail and express environments with over 85 percent of seizures originating from mainland China and Hong Kong. Declaration of Keith A. Vogt (the "Vogt" Declaration) at ¶ 2. According to an intellectual property rights seizures statistics reports issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government exceeds $1.5 billion. *Id.* Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses. *Id.* at ¶ 3.

The Counterfeit NEON GENESIS EVANGELION Products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the Counterfeit NEON GENESIS EVANGELION Products were manufactured by and come from a

common source and that, upon information and belief, Defendants are interrelated. Kamimura Declaration at ¶ 15.

### i. Defendants Operate Legitimate-Looking Internet Stores

Upon information and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine NEON GENESIS EVANGELION Products. *Id.* at ¶ 12. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, Amazon, and PayPal. *Id.* Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. *Id.* Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos. *Id.* Plaintiffs have not licensed or authorized Defendants to use their NEON GENESIS EVANGELION Trademarks, and none of the Defendants are authorized retailers of genuine NEON GENESIS EVANGELION Products. *Id.*

### ii. Defendants Illegitimately Optimize the Defendant Internet Stores for Search Engines

Upon information and belief, Defendants also deceive unknowing consumers by using the NEON GENESIS EVANGELION Trademarks without authorization within the content, text, and/or meta tags of their Internet Stores in order to attract various search engines crawling the internet looking for websites relevant to consumer searches for NEON GENESIS EVANGELION Products. *Id.* at ¶ 13. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Store listings show up at or near the top of relevant search results and misdirect consumers

searching for genuine NEON GENESIS EVANGELION Products. *Id.* Further, Defendants utilize similar illegitimate SEO tactics to propel new internet stores to the top of search results after others are shut down. *Id.* As such, Plaintiffs also seek to disable Defendant Internet Stores owned by Defendants that are the means by which the Defendants could continue to sell Counterfeit NEON GENESIS EVANGELION Products.

iii. <u>Defendants Use Fictitious Aliases and Common Tactics to Evade Shut Down</u>

Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores. *Id.* at ¶ 14. Other Defendant Internet Stores conceal the owners' identity and contact information. *Id.* Upon information and belief, Defendants regularly create new online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. *Id.* Such Defendant Internet Store registration patterns are one of many common tactics used by Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down. *Id.*

Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. *Id.* at ¶ 15. For example, many of the Defendant Internet Stores have virtually identical layouts, even though different aliases were used to register the respective Defendant Internet Stores. *Id.* In addition, Counterfeit NEON GENESIS EVANGELION Products for sale in the Defendant Internet Stores bear similar indicia of being counterfeit to one another, suggesting that the Counterfeit NEON GENESIS EVANGELION Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. *Id.* The Defendant Internet Stores also include other notable common features, including use of the same store name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, metadata, illegitimate SEO tactics,

HTML user-defined variables, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services, similar name servers, and the use of the same text and images. *Id.*

In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. *Id.* at ¶ 16. *See also,* Vogt Declaration at ¶ 4. For example, counterfeiters like Defendants will often register new online marketplace accounts under new aliases once they receive notice of a lawsuit. *Id. See also,* Kamimura Declaration at ¶ 16.

Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal or similar accounts behind layers of payment gateways so that they can continue operation. Kamimura Declaration at ¶ 17. Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their accounts to off-shore bank accounts outside the jurisdiction of this Court. *Id. See also,* Vogt Declaration at ¶ 6. Indeed, analysis of transaction logs from similar cases brought by other trademark owners indicates that off-shore counterfeiters regularly move funds from their U.S. accounts to China-based bank accounts outside the jurisdiction of this Court. Vogt Declaration at ¶ 8.

Plaintiffs' well-pleaded allegations regarding registration patterns, similarities among the Defendant Internet Stores and the Counterfeit NEON GENESIS EVANGELION Products for sale thereon, and common tactics employed to evade enforcement establish a logical relationship among Defendants suggesting that Defendants are an interrelated group of counterfeiters. Upon information and belief, Defendants are knowingly and willfully working in active concert to manufacture, import, distribute, offer for sale, and sell products in connection with counterfeit versions of the NEON GENESIS EVANGELION Trademarks in the same transaction, occurrence, or series of transactions or occurrences. As indicated above, the tactics used by Defendants to

conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiffs to discover the true identities of Defendants, the exact interworking of Defendants' counterfeit network, and the relationship among Defendants. In the event that Defendants provide additional credible information regarding their identities, Plaintiffs will take appropriate steps to amend the Complaint.

## III.    ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Plaintiffs' reputation and the goodwill symbolized by the NEON GENESIS EVANGELION Trademarks. To stop Defendants' sale of Counterfeit NEON GENESIS EVANGELION Products, Plaintiffs respectfully request that this Court issue a temporary restraining order. Without the relief requested by Plaintiffs' instant Motion, Defendants' unlawful activity will continue unabated, and Plaintiffs, as well as consumers, will suffer irreparable harm.

Rule 65(b) of the Federal Rules of Civil Procedure provides that a court may issue an *ex parte* temporary restraining order where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). Defendants here fraudulently promote, advertise, offer to sell, and sell goods in connection with counterfeits of the NEON GENESIS EVANGELION Trademarks via the Defendant Internet Stores. Defendants are creating a false association in the minds of consumers between Defendants and Plaintiffs by deceiving consumers into believing that the Counterfeit NEON GENESIS EVANGELION Products for sale on Defendant Internet Stores are sponsored or endorsed by Plaintiffs. The entry of a temporary restraining order is appropriate because it would immediately stop Defendants from benefiting from their wrongful use of the NEON GENESIS EVANGELION Trademarks and preserve the status quo until such time as a hearing can be held.

In the absence of a temporary restraining order without notice, Defendants can and likely will modify registration data and content, change hosts, redirect traffic to other webstores in their control, and move any assets from U.S.-based accounts to offshore accounts outside the jurisdiction of this Court. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. S*ee Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, Plaintiffs respectfully request that this Court issue the requested *ex parte* Temporary Restraining Order. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

### A. This Court May Exercise Personal Jurisdiction over Defendants

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in the United States, including Illinois, by directly offering for sale products in this judicial district as well as through at least the fully interactive, commercial Defendant Internet Stores. Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase products bearing counterfeit versions of the NEON GENESIS EVANGELION Trademarks. Each Defendant has targeted sales from Illinois residents by operating internet stores that offer shipping to the United States, including Illinois, and has offered to sell, and on information and belief, has sold and continues to sell

10

Counterfeit NEON GENESIS EVANGELION Products to consumers within the United States, including the State of Illinois. *See* Complaint at ¶¶ 2, 20 and 21. Without the benefit of an evidentiary hearing, Plaintiffs bear only the burden of making a prima facie case for personal jurisdiction; all of Plaintiffs' asserted facts should be accepted as true and any factual determinations should be resolved in its favor. *See uBID, Inc. v. GoDaddy Group, Inc.* 623 F.3d 421, 423 (7th Cir. 2010); *see also*, *Purdue Research Found. v. Sanofi-Sythelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) ("When determining whether a plaintiff has met his burden, jurisdictional allegations pleaded in the complaint are accepted as true unless proven otherwise by defendants' affidavits or exhibits.").

Illinois courts regularly exercise personal jurisdiction over websites using registered trademark(s) without authorization in connection with the offering for sale and selling of infringing and counterfeit merchandise to Illinois residents over the internet. 735 ILCS 5/2-209(a)(2). *See, e.g., Curry v. Revolution Labs., LLC,* 949 F.3d 385, 399 (7th Cir. 2020); *Tommy Hilfiger Licensing LLC et al v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, 1:20-cv-07477 (N.D. Ill. Mar. 24, 2021) (Docket Entry 46); *Christian Dior Couture, S.A. v. Liu*, 2015 U.S. Dist. LEXIS 158225 (N.D. Ill. Nov. 17, 2015); *Monster Energy Co. v. Chen Wensheng*, 2015 U.S. Dist. LEXIS 132283 (N.D. Ill. Sept. 29, 2015).

Through at least the fully interactive commercial internet websites operating under the Defendant Internet Stores and the marketplace listings operated using the online marketplace accounts identified in Schedule A, each of the Defendants has targeted sales from Illinois residents by offering shipping to the United States, including Illinois, and, on information and belief, has sold or offered to sell Counterfeit NEON GENESIS EVANGELION Products to residents of the United States, including Illinois. Each of the Defendants is committing tortious acts in Illinois, is

11

engaging in interstate commerce, and has wrongfully caused Plaintiffs substantial injury in the State of Illinois.

### B. Standard for Temporary Restraining Order and Preliminary Injunction

District courts within this circuit hold that the standard for granting a temporary restraining order and the standard for granting a preliminary injunction are identical. *See, e.g. Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, *1 (N.D. Ill. May 15, 2001) (citation omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the Plaintiff will succeed on the merits, the less the balance of harms need favor the Plaintiff's position. *Id.* The sliding scale approach is not mathematical in nature, rather "it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id.* at 895-896. The greater the movant's likelihood of succeeding on the merits, the less the balancing of harms need be in his favor. *See Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 461 (7th Cir. 2000).

12

**C. Plaintiffs Will Likely Succeed on the Merits**

    i.   <u>Plaintiffs Will Likely Succeed on Plaintiffs' Trademark Infringement and Counterfeiting Claim</u>

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, uses in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use[s] [are] likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). To prove a *prima facie* case of infringement, a Plaintiff must show (1) its mark is distinctive enough to be worthy of protection; (2) Defendants are not authorized to use the trademarks; and (3) Defendants' use of the trademarks causes a likelihood of confusion as to the origin or sponsorship of Defendants' products. *See Neopost Industrie B.V. v. PFE Int'l Inc.,* 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) (citation omitted). Plaintiffs satisfy all three requirements of the Lanham Act to successfully bring a trademark infringement and counterfeiting claim.

Regarding the first two elements, Plaintiffs' NEON GENESIS EVANGELION Trademarks are inherently distinctive and are registered with the United States Patent and Trademark Office on the Principal Register. THE NEON GENESIS EVANGELION Trademarks have been continuously used. Kamimura Declaration at ¶¶ 5-8. The registrations for the NEON GENESIS EVANGELION Trademarks are valid, subsisting, and in full force and effect. *Id*. at ¶ 6. The registrations for the NEON GENESIS EVANGELION Trademarks constitute *prima facie* evidence of its validity and of Plaintiffs' exclusive rights to use the NEON GENESIS EVANGELION Trademarks pursuant to 15 U.S.C. § 1057(b). Furthermore, Plaintiffs have not licensed or authorized Defendants to use the NEON GENESIS EVANGELION Trademarks, and

none of the Defendants are authorized retailers of genuine NEON GENESIS EVANGELION Products. *Id.* at ¶ 12.

Plaintiffs satisfy the third factor, as well. Some courts do not undertake a factor-by-factor analysis under *Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 495 (2d Cir. 1961) because counterfeits, by their very nature, cause confusion. *See Topps Co., Inc. v. Gerrit J. Verburg Co.*, 41 U.S.P.Q.2d 1412, 1417 (S.D.N.Y.1996) ("Where the marks are identical, and the goods are also identical and directly competitive, the decision can be made directly without a more formal and complete discussion of all of the Polaroid factors."); *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir.1987) ("Where, as here, one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion.").

The Seventh Circuit, however, has enumerated seven factors to determine whether there is a likelihood of confusion: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and, (7) intent of the defendants to palm off their products as that of another. *Eli Lilly*, 233 F.3d at 461-462 (citation omitted). These factors are not a mechanical checklist, and "[t]he proper weight given to each of [the] factors will vary from case to case." *Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d 376, 381 (7th Cir. 1996). At the same time, although no one factor is decisive, the similarity of the marks, the intent of the defendant, and evidence of actual confusion are the most important considerations. *G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 999 (7th Cir. 1989).

In this case, Plaintiffs plainly satisfy the likelihood of confusion test. Defendants are selling Counterfeit NEON GENESIS EVANGELION Products using a counterfeit mark identical to the NEON GENESIS EVANGELION Trademarks. As such, the first and second likelihood of confusion factors weigh heavily in favor of Plaintiffs.

Plaintiffs also satisfies the third factor, namely, the area and manner of concurrent use. When considering the third factor, a court looks at "whether there is a relationship in use, promotion, distribution or sales between the goods or services of the parties." *CAE, Inc. v. Clean Air Eng'g Inc.,* 267 F.3d 660, 681 (7th Cir. 2001). A court also looks to whether the parties used the same channels of commerce, targeted the same general audience, and/or used similar marketing procedures. *Id*. Here, both Plaintiffs and Defendants show the same products using the NEON GENESIS EVANGELION Trademarks to the same consumers. *See* Exhibit 2 to the Kamimura Declaration. Thus, because Defendants target the same consumers as Plaintiffs, this factor also weighs in favor of Plaintiffs.

Regarding the fourth factor, degree of consumer care, potential consumers purchasing NEON GENESIS EVANGELION Products are not restricted to a certain specialized, sophisticated group of people. Rather, the consumer base is a diverse group of people. "[W]hen a buyer class is mixed, the standard of care to be exercised by the reasonably prudent purchaser will be equal to that of the least sophisticated consumer in the class." *Trans Union LLC v. Credit Research, Inc.,* 142 F. Supp. 2d 1029, 1043 (N.D. Ill. 2001) (citation omitted). As such, NEON GENESIS EVANGELION brand consumers are very likely to be confused, so this factor favors Plaintiffs.

Due to its long-standing use and wide acceptance by the public, the NEON GENESIS EVANGELION Trademarks have become associated with high quality NEON GENESIS

15

EVANGELION Products. The NEON GENESIS EVANGELION Trademarks are distinctive when applied to the NEON GENESIS EVANGELION Products. The marks signify to consumers that the products come from Plaintiffs and are manufactured to Plaintiffs' quality standards. Thus, the fifth factor, the strength of the mark, also weighs heavily in favor of Plaintiffs.

As for the sixth factor, Plaintiffs do not need to prove the likelihood of confusion with evidence of actual confusion; instead, it merely needs to show *some* evidence of potential confusion. *See Libman Co. v. Vining Indus., Inc.*, 69 F.3d 1360, 1363 (7th Cir.1995); *see also Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 960 (7th Cir. 1992) (the Seventh Circuit has consistently found that "Plaintiff need not show actual confusion in order to establish likelihood of confusion."). In this case, actual confusion can be inferred because Defendants are selling Counterfeit NEON GENESIS EVANGELION Products in connection with the NEON GENESIS EVANGELION Trademarks. Because the goods are similar and have identical or similar uses, consumers will be confused and think that Defendants' products are genuine NEON GENESIS EVANGELION Products or are sponsored or endorsed by Plaintiffs. This factor weighs in favor of Plaintiffs.

Regarding the seventh and final factor, Defendants are intentionally using the NEON GENESIS EVANGELION Trademarks to confuse and deceive the consuming public into thinking that Defendants' Counterfeit NEON GENESIS EVANGELION Products are manufactured by or emanate from Plaintiffs. Defendants are purposefully attempting to benefit and trade off Plaintiffs' goodwill and reputation. Therefore, the final factor regarding Defendants' intent also weighs heavily in Plaintiffs' favor.

In sum, each of the seven likelihood of confusion factors weighs heavily in favor of Plaintiffs, and, therefore, Plaintiffs have proved that it has a reasonable likelihood of success on the merits for Plaintiffs' trademark infringement and counterfeiting claim.

ii.　Plaintiffs are Likely to Succeed on the False Designation of Origin Claim

A Plaintiff bringing a false designation of origin claim under 15 U.S.C. § 1125(a) must show that: (1) the Plaintiff has a protectable trademark; and (2) a likelihood of confusion will exist as to the origin of Plaintiff's products. *All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.,* 2013 WL 1701871, *10 (C.D. Ill. Apr. 18, 2013) (*citing Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.,* 188 F. 3d 427, 436 (7th Cir. 1999)). This is the same test that is used for determining whether trademark infringement has occurred under the Lanham Act. *See Neopost*, 403 F. Supp. 2d at 684. Because the NEON GENESIS EVANGELION Trademarks are registered marks, and Plaintiffs have established a likelihood of success on the merits of its trademark infringement and counterfeiting claim against Defendants (*supra*), a likelihood of success on the merits for Plaintiffs' false designation of origin claim is also established.

iii.　Plaintiffs are Likely to Succeed on the Illinois Uniform Deceptive Trade Practices Act Claim

In Illinois, courts resolve unfair competition and deceptive trade practices claims "according to the principles set forth under the Lanham Act." *Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994). Illinois courts look to federal case law and apply the same analysis to state infringement claims. *Id.* at 579 (citation omitted). The determination as to whether there is a likelihood of confusion is similar under both the Lanham Act and the Illinois Uniform Deceptive Trade Practices Act. *Am. Broad. Co. v. Maljack Prods., Inc.*, 34 F. Supp. 2d 665, 681 (N.D. Ill. 1998). Because Plaintiffs have established a likelihood of success on the merits of its trademark infringement and counterfeiting claim against Defendants (*supra*) and the standard is

17

the same under Illinois law, Plaintiffs have established a likelihood of success on the merits for its

Illinois Uniform Deceptive Trade Practices Act claim.

### D. There Is No Adequate Remedy at Law and Plaintiffs Will Suffer Irreparable Harm in the Absence of Preliminary Relief

On December 27, 2020, Congress passed the Trademark Modernization Act of 2020

(codified as part of the Consolidated Appropriations Act, 2021, Pub. L. 116-260). The Act, *inter*

*alia*, amended the text of 15 U.S.C. § 1116(a) codified a rebuttable presumption of irreparable

harm which, as amended, now reads in relevant part:

> The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title. ***A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction or upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order.***

*See Vineyard House, LLC v. Constellation Brands United States Operations, Inc.*, No. 4:19-cv-

01424-YGR, 2021 U.S. Dist. LEXIS 15702, at *36-37 n.16 (N.D. Cal. Jan. 26, 2021). Also, the

Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can

constitute irreparable injury for which the trademark owner has no adequate legal remedy."

*Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural*

*Answers, Inc.,* 233 F.3d 456, 469 (7th Cir. 2000)); *Meridian Mut. Ins. Co. v. Meridian Ins. Group,*

*Inc.,* 128 F.3d 1111, 1114 (7th Cir. 1997); *Wesley–Jessen Division of Schering Corp. v. Bausch &*

*Lomb Inc.*, 698 F.2d 862, 867 (7th Cir.1983). Irreparable injury "almost inevitably follows" when

there is a high probability of confusion because such injury "may not be fully compensable in

damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th

Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir. 1988); *see also 4 Callmann on Unfair Competition, Trademarks and Monopolies* § 88.3(b) at 205 (3d ed. 1970). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1026 (7th Cir. 1979).

Defendants' unauthorized use of the NEON GENESIS EVANGELION Trademarks has and continues to irreparably harm Plaintiffs through diminished goodwill and brand confidence, damage to Plaintiffs' reputation, loss of exclusivity, and loss of future sales. Kamimura Declaration at ¶¶ 18-23.

The extent of the harm to Plaintiffs' reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002) (Finding that damage to Plaintiffs' goodwill was irreparable harm for which Plaintiffs had no adequate remedy at law); *Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis,* 35 F.3d 1134, 1140 (7th Cir. 1994) ("[S]howing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages."). Plaintiffs will suffer immediate and irreparable injury, loss, or damage if an *ex parte* temporary restraining order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1). Kamimura Declaration at ¶ 23. As such, Plaintiffs should be granted preliminary relief.

### E. The Balancing of Harms Tips in Plaintiffs' Favor

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if

preliminary relief is not granted, then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Plaintiff will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895.

As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the marks of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the Plaintiff['s] trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n,* 929 F. Supp. 473, 478 (D.D.C. 1996).

As Plaintiffs have demonstrated, Defendants have been profiting from the sale of Counterfeit NEON GENESIS EVANGELION Products. Thus, the balance of equities tips decisively in Plaintiffs' favor. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

### F.  Issuance of the Injunction Is in the Public Interest

An injunction in these circumstances is in the public interest because it will prevent consumer confusion and stop Defendants from violating federal trademark law. The public is currently under the false impression that Defendants are operating their Defendant Internet Stores with Plaintiffs' approval and endorsement. An injunction serves the public interest in this case "because enforcement of the trademark laws prevents consumer confusion." *Eli Lilly*, 233 F.3d at 469.

20

Federal courts have long held that "the trademark laws ... are concerned not alone with the protection of a property right existing in an individual, but also with the protection of the public from fraud and deceit." *Stahly, Inc. v. M.H. Jacobs Co.,* 183 F.2d 914, 917 (7th Cir. 1950) (citations omitted). The public interest is further served by protecting "the synonymous right of a trademark owner to control his product's reputation." *James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976); *see also Shashi, Inc. v. Ramada Worldwide, Inc.,* No. 7:05-cv-00016-JGW-mfu, 2005 WL 552593, *4 (W.D. Va. Mar. 1, 2005) ("It is in the best interest of the public for the court to defend the integrity of the intellectual property system and to prevent consumer confusion").

In this case, the injury to the public is significant, and the injunctive relief that Plaintiffs seek is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. The public has the right not to be confused and defrauded as to the source of the goods and services offered by Defendants, or as to the identity of the owner of the trademarks and service marks used in connection with those goods and services. Unless Defendants' unauthorized use of the NEON GENESIS EVANGELION Trademarks is enjoined, the public will continue to be confused and misled by Defendants' conduct.

For these reasons, it is respectfully submitted that granting Plaintiffs' Motion for Entry of a Temporary Restraining Order is in the public interest.

## IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

In addition to this Court's inherent authority to issue injunctive relief, the Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …." 15 U.S.C. § 1116(a). Furthermore, Rule 65(b) of the Federal Rules of Civil Procedure

provides that a court may issue a temporary restraining order without notice where facts show that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition. Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), a court has the power to bind any third parties, such as financial institutions, who are in active concert with Defendants or who aid and abet Defendants and are given actual notice of the order. Fed. R. Civ. P. 65. The facts in this case warrant such relief.

### A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Plaintiffs' Marks Is Appropriate

Plaintiffs respectfully requests a temporary injunction requiring Defendants to immediately cease all use of the NEON GENESIS EVANGELION Trademarks or a substantially similar mark on or in connection with all Defendant Internet Stores. Such relief is necessary to stop the ongoing harm to the NEON GENESIS EVANGELION Trademarks and associated goodwill, as well as harm to consumers, and to prevent Defendants from continuing to benefit from their unauthorized use of the NEON GENESIS EVANGELION Trademarks.

The need for *ex parte* relief is magnified in today's global economy where counterfeiters can anonymously operate over the Internet. Plaintiffs are currently unaware of both the true identities and locations of Defendants, as well as other Defendant Internet Stores used to distribute Counterfeit NEON GENESIS EVANGELION Products.

Many courts have authorized immediate injunctive relief in similar cases involving the unauthorized use of trademark(s) and counterfeiting. *See, e.g., Khara Inc. et al. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 22-cv-00010 (N.D. Ill. Jan. 5, 2022) and *Legend Pictures, LLC v. The Partnerships and Unincorporated Associations Identified on Schedule "A",* No. 21-cv-02788 (N.D. Ill. May 26, 2021) .

22

**B. Preventing the Fraudulent Transfer of Assets is Appropriate**

Plaintiffs request an *ex parte* restraint of Defendants' assets so that Plaintiffs' right to an equitable accounting of Defendants' profits from sales of Counterfeit NEON GENESIS EVANGELION Products is not impaired. Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, Defendants in this case hold most of their assets in China, making it easy to hide or dispose of assets, which will render an accounting by Plaintiffs meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when Plaintiffs' complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992). In addition, Plaintiffs have shown a strong likelihood of succeeding on the merits of its trademark infringement and counterfeiting claim, so according to the Lanham Act 15 U.S.C. § 1117(a)(1), Plaintiffs are entitled, "subject to the principles of equity, to recover ... defendant's profits." Plaintiffs' Complaint seeks, among other relief, that Defendants account for and pay to Plaintiffs all profits realized by Defendants by reason of Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant Plaintiffs' request for a prejudgment asset freeze to preserve the relief sought by Plaintiffs.

The Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies,* entered an asset restraining order in a trademark infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. *Lorillard*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005). This Court, citing *Grupo Mexicano de Desarollo, S.A. v. Alliance Bond Fund*,

527 U.S. 308 (1999), recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* (citing *Grupo Mexicano*, 527 U.S. at 325 (citing *Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940)). Because the tobacco company sought a disgorgement of the store owner's profits, an equitable remedy, the Court found that it had the authority to freeze the store owner's assets. *Id.; see also Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988 (7th Cir. 2002) ("since the assets in question ... were the profits of the [defendants] made by unlawfully stealing [the Plaintiff's] services, the freeze was appropriate and may remain in place pending final disposition of this case."); *accord* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:40 (4th ed. 2013). In addition, courts in this district regularly issue asset-restraining orders for entire financial accounts in cases involving the sale of counterfeit products. *See, e.g., Khara Inc. et al. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 22-cv-00010 (N.D. Ill. Jan. 5, 2022) and *Legend Pictures, LLC v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 21-cv-02788 (N.D. Ill. May 26, 2021) .

Plaintiffs have shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, the granting of an injunction preventing the transfer of Defendants' assets is proper.

### C. Plaintiffs are Entitled to Expedited Discovery

The Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) (quoting

*Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S. Ct. 2380 (1978)). A district court has wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Furthermore, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

As described above, Defendants are using third-party payment processors such as Visa, PayPal, and Western Union, which helps to increase their anonymity by interposing a third party between the consumer and Defendants. Without being able to discover Defendants' bank and payment system accounts, any asset restraint would be of limited value because Plaintiffs would not know the entities upon whom to serve the order.

Plaintiffs respectfully request expedited discovery to discover bank and payment system accounts Defendants use for their counterfeit sales operations. The discovery requested on an expedited basis in Plaintiffs' Proposed Temporary Restraining Order has been limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained.

Under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third party who is in active concert with the Defendants that is given notice of the order to provide expedited discovery in this action. Fed. R. Civ. P. 65(d)(2)(C). Plaintiffs' counsel is aware that the same third parties, in previous lawsuits, have worked with trademark owners and is not aware of any reason that Defendants or third parties cannot comply with these expedited discovery requests without undue burden. Further, all relevant third parties have in fact complied with identical requests in previous similar cases. More importantly, as Defendants have engaged in many deceptive practices in hiding their identities and accounts, Plaintiffs' seizure and asset restraint in

25

the Temporary Restraining Order may have little meaningful effect without the requested relief. Accordingly, Plaintiffs respectfully request that expedited discovery be granted.

### D. Service of Process by E-mail and/or Electronic Publication is Warranted in this Case

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Plaintiffs request this Court's authorization to serve process by electronically publishing a link to the Complaint, the Temporary Restraining Order, and other relevant documents on a website, and/or by sending an e-mail to the e-mail addresses identified in Exhibit 2 to the Kamimura Declaration and any e-mail addresses provided for Defendants by third parties that includes a link to said website. Plaintiffs submit that providing notice via electronic publication and/or e-mail, along with any notice that Defendants receive from Online Marketplaces and payment processors, is reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

Electronic service is appropriate and necessary in this case because Defendants, on information and belief: (1) have provided false names and physical address information in their registrations for the Defendant Internet Stores in order to conceal their locations and avoid liability for their unlawful conduct; and (2) rely primarily on electronic communications to communicate with their registrars and customers, demonstrating the reliability of this method of communication by which the registrants of the Defendant Internet Stores may be apprised of the pendency of this action. Authorizing service of process solely via e-mail and/or electronic publication will benefit all parties and this Court by ensuring that Defendants receive prompt notice of this action, thus allowing this action to move forward expeditiously. Absent the ability to serve Defendants in this manner, Plaintiffs will almost certainly be left without the ability to pursue a final judgment.

Despite providing false physical addresses, the registrants of the Defendant Internet Stores must generally provide an accurate e-mail address so that their Marketplaces may communicate with them regarding issues related to the purchase, transfer, and maintenance of the various accounts. Likewise, online marketplace account operators accepting PayPal, or similar accounts, must provide a valid email address to customers for completing payment. Moreover, it is necessary for merchants, such as the registrants of the Defendant Internet Stores, who operate entirely online, to visit their internet stores to ensure it is functioning and to communicate with customers electronically. As such, it is far more likely that Defendants can be served electronically than through traditional service of process methods.

Federal Rule of Civil Procedure 4(f)(3) allows this Court to authorize service of process by any means not prohibited by international agreement as the court directs. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). The Ninth Circuit in *Rio Properties* held, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable." *Id.* at 1017. The Court reached this conclusion, in part, because the defendant conducted its business over the internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail. *Id.*

Similarly, a number of courts, including the Northern District of Illinois, have held that alternate forms of service pursuant to Rule 4(f)(3), including e-mail service, are appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." *Id.* at 1018; s*ee also, MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co., Ltd.*, No. 1:08-cv-02593, 2008 WL 5100414, *2 (N.D. Ill. Dec. 1, 2008) (holding e-mail and facsimile service appropriate); *Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 563 (E.D. Tenn. 2004) (quoting *Rio*, 284 F.3d at 1018) (allowing e-mail service); s*ee also Juniper Networks,*

27

*Inc. v. Bahattab*, No. 1:07-cv-01771-PLF-AK, 2008 WL 250584, *1-2, (D.D.C. Jan. 30, 2008) (citing *Rio*, 284 F.3d at 1017-1018; other citations omitted) (holding that "in certain circumstances ... service of process via electronic mail ... is appropriate and may be authorized by the Court under Rule 4(f)(3) of the Federal Rules of Civil Procedure").

Plaintiffs submit that allowing service solely by e-mail and/or electronic publication in the present case is appropriate and comports with constitutional notions of due process, particularly given the decision by the registrants of the Defendant Internet Stores to conduct their internet-based activities anonymously.

Furthermore, Rule 4 does not require that a party attempt service of process by other methods enumerated in Rule 4(f) before petitioning the court for alternative relief under Rule 4(f)(3). *Rio Props. v. Rio Intern. Interlink,* 284 F.3d 1007, 1014-15 (9th Cir. 2002). As the *Rio Properties* Court explained, Rule 4(f) does not create a hierarchy of preferred methods of service of process. *Id.* at 1014. To the contrary, the plain language of the Rule requires only that service be directed by the court and not be prohibited by international agreement. There are no other limitations or requirements. *Id.* Alternative service under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief," but is rather one means among several by which an international defendant may be served. *Id.* As such, this Court may allow Plaintiffs to serve Defendants via electronic publication and/or e-mail. *See Monco v. Zoltek Corp.*, 2018 WL 3190817, at *4 (N.D. Ill. Apr. 24, 2018); *Strabala v. Zhang*, 318 F.R.D. 81, 115 (N.D. Ill. 2016); *See also Hangzhou Chic Intelligent Technology Co.; and Unicorn Global, Inc., v. The Partnerships and Unincorporated Associations Identified on Schedule A,* 20-cv-04806 (N.D. Ill. April 1, 2021) (finding Hague Convention service is optional under Federal Rule of Civil Procedure 4.).

Additionally, Plaintiffs are unable to determine the exact physical whereabouts or identities of the registrants of the Defendant Internet Stores due to their provision of false and incomplete street addresses. Plaintiffs do, however, have good cause to suspect the registrants of the respective Defendant Internet Stores are residents of China. The United States and the People's Republic of China are both signatories to the Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil and Commercial Matters (the "Convention"). Vogt Declaration at ¶ 10. The Hague Convention does not preclude service by email, and the declarations to the Hague Convention filed by China do not appear to expressly prohibit email service. *Id.* Additionally, according to Article 1 of the Hague Convention, the "convention shall not apply where the address of the person to be served with the document is not known." *Id*. at ¶ 11. As such, United States District Courts, including in this district, routinely permit alternative service of process notwithstanding the applicability of the Hague Convention. *See e.g.*, *In re Potash Antitrust Litig.,* 667 F. Supp. 2d 907, 930 (N.D. Ill. 2009) ("Plaintiffs are not required to first attempt service through the Hague Convention."); s*ee also In re LDK Solar Secs. Litig.,* 2008 WL 2415186,*2 (N.D. Cal. Jun. 12, 2008) (authorizing alternative means of service on Chinese defendants without first attempting "potentially fruitless" service through the Hague Convention's Chinese Central Authority); *Nanya Tech. Corp. v. Fujitsu Ltd.*, No. 1:06-cv-00025, 2007 WL 269087, *6 (D. Guam Jan. 26, 2007) (the Hague Convention, to which Japan is a signatory, did not prohibit e-mail service upon Japanese defendant); *Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 562 (E.D. Tenn. 2004) (recognizing that, while "communication via e-mail and over the internet is comparatively new, such communication has been zealously embraced within the business community"). In addition, the law of the People's Republic of China does not appear to prohibit electronic service of process. Vogt Declaration at ¶¶ 10-12. The proposed Temporary Restraining

Order provides for issuance of single original summons [1] in the name of "xianyouxianlonghuazhufuzhenfuzhuangshanghang and all other Defendants identified in the Complaint" that shall apply to all Defendants in accordance with Federal Rule of Civil Procedure 4(b). As such, Plaintiffs respectfully request this Court's permission to serve Defendants via e-mail and/or electronic publication.

## V.    A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a temporary restraining order or preliminary injunction is vested in this Court's sound discretion. *Rathmann Grp. v. Tanenbaum,* 889 F.2d 787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,* 174 F.3d 411, 421 (4th Cir. 1999); Fed. R. Civ. P. 65(c). Because of the strong and unequivocal nature of Plaintiffs' evidence of counterfeiting, infringement, and unfair competition, Plaintiffs respectfully request that this Court require Plaintiffs to post a bond of no more than Ten Thousand U.S. Dollars ($10,000.00). *See, e.g.*, *Monster Energy Co. v. Chen Wensheng*, 136 F. Supp. 3d 897, 910-11 (N.D. Ill. 2015).

## VI.    CONCLUSION

Plaintiffs' business, the NEON GENESIS EVANGELION brand, and consumers are being irreparably harmed. Without entry of the requested relief, the sale of Counterfeit NEON GENESIS EVANGELION Products will continue to lead prospective purchasers and others to believe that Defendants' products have been manufactured by or emanate from Plaintiffs. Therefore, entry of an *ex parte* order is necessary to protect Plaintiffs' trademark rights, to prevent further harm to Plaintiffs and the consuming public, and to preserve the status quo. In view of the foregoing and consistent with previous similar cases, Plaintiffs respectfully request that this Court enter a

---

[1] The Advisory Committee Notes to the 1993 Amendment to Rule 4(b) states, "If there are multiple defendants, the Plaintiffs may secure issuance of a summons for each defendant, or may serve copies of a single original bearing the names of multiple defendants if the addressee of the summons is effectively identified." Fed. R. Civ. P. 4(b) advisory committee notes (1993) (emphasis added).

Temporary Restraining Order in the form submitted herewith and set a status hearing before the expiration of the Temporary Restraining Order at which hearing Plaintiffs intend to present a motion for preliminary injunction.

DATED:  February 2, 2022                                    Respectfully submitted,

_/s/ Keith A. Vogt_
Keith A. Vogt (Bar No. 6207971)
Keith Vogt, Ltd.
33 West Jackson Boulevard, #2W
Chicago, Illinois 60604
Telephone: 312-971-6752
E-mail:  keith@vogtip.com

**ATTORNEY FOR PLAINTIFFS**